**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT KRAWCZYK, | CIVIL ACTION NO. 14-CV-2376 |
| Plaintiff, | (JUDGE CAPUTO) |
| v. | |
| ROARING BROOK TOWNSHIP, | |
| Defendant. | |

**MEMORANDUM**

Presently before the Court is Defendant Roaring Brook Township's Motion to Dismiss (Doc. 7) Plaintiff Robert Krawczyk's Complaint (Doc. 1) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff alleges that he was terminated from employment with Defendant because of his age. Because the Complaint contains sufficient facts to state a plausible claim that Defendant discriminated against Plaintiff on the basis of age, in violation of federal and state law, and that this discrimination was willful, Defendant's Motion to Dismiss (Doc. 7) will be *denied.*

**I. Background**

**A. Factual Background**

As alleged in the Complaint (Doc. 1), the facts are as follows: Plaintiff is an adult resident of Pennsylvania. (*Id.,* ¶ 8.) Defendant Roaring Brook Township ("the township," "Roaring Brook") is organized as a Second Class Township. (*Id.,* ¶ 9.) Defendant is governed by a Board of three (3) elected supervisors. (*Id.,* ¶ 11.) In 2013, the supervisors were Eric Schield, Robert Farischon, and Anthony Jordan. (*Id.,* ¶¶ 12-14.)

Roaring Brook Township Police Department ("the Police Department") is the police department for Defendant Roaring Brook and adjacent municipality Elmhurst. (*Id.,* ¶¶ 10, 17.) In 2013, Donald Hickey was the Chief of the Police. (*Id.,* ¶ 16.) At all times in the complaint, Defendant's agents were acting within the scope of authority. (*Id.,* ¶ 18.) Plaintiff Krawczyk was born on December 11, 1958. (*Id.,* ¶ 21.) He was hired by the Roaring Brook Police Department as a part-time officer in October 2003. (*Id.,* ¶ 23.) At all times

during his employment, Plaintiff was over forty (40) years of age.  (*Id.,* ¶ 24.)  Plaintiff believes that he was the oldest officer employed by Defendant.  (*Id.,* ¶ 34.)

In or about November 2007, Town Supervisors informed Plaintiff that he was going to become a full-time officer.  (*Id.,* ¶ 25.)  Around the same time, Plaintiff had a conversation with Supervisor Eric Schield about his employment.  (*Id.,* ¶ 26.)  Supervisor Schield is "substantially younger" than Plaintiff.  *(Id.)*  Supervisor Schield asked Plaintiff how old he was, and replied "how old?" in "disbelief or surprise" when Plaintiff responded.  (*Id.,* ¶ 27.)

After this discussion, Plaintiff was told that he was no longer going to become a full-time officer.  (*Id.,* ¶ 28.)  However, Plaintiff was going to receive medical insurance and vacation time, benefits otherwise reserved for full-time officers.  (*Id.,* ¶ 29.)  Plaintiff received these benefits until he was terminated.  (*Id.*, ¶¶ 30-31.)

In 2010, Donald Hickey, who is younger than Plaintiff, was the only full-time officer.  (*Id.*, ¶ 32.)  Hickey was promoted to Police Chief in early 2010.  (*Id.*, ¶ 33).  Plaintiff statesthat after becoming Chief, Hickey openly expressed a desire to have a younger police force, and frequently made comments about hiring "new guys" and getting "younger blood."  (*Id.*, ¶ 35.)    In late 2010 and 2011, the Township hired two part-time officers in their mid-twenties: Luke Olzar, who was approximately twenty-five (25) years old, and Doug DiPalma, who was approximately twenty-four (24) years old.  (*Id.,* ¶¶ 36-37.)

In or about January 2012, Plaintiff saw that Chief Hickey wrote "I can't take it anymore" in the daily patrol log, and Chief Hickey told Plaintiff to report to a meeting with the Township Supervisors the next morning.  (*Id.,* ¶¶ 38-39.)  At the meeting, Chief Hickey gave Plaintiff a letter dated January 12, 2012, listing complaints with Plaintiff's performance dating back to 2010.  (*Id.*, ¶ 40.)  Prior to this letter, Plaintiff had never been disciplined, reprimanded, or approached about his performance by the Supervisors or the Chief.  (*Id.*)  Plaintiff asserts that he provided explanations for several of the listed incidents, but was told that he would still be receiving a letter of reprimand in his file.  (*Id.,* ¶ 41.)

Shortly after this meeting, in or about February 2012, the Township hired two new

2

part-time officers: Michael Malick, who was approximately forty (40) years old, and Steve Price, who was approximately thirty (30) years old. (*Id.,* ¶¶ 43-44.) In late 2012, the Township hired Matthew Cianfichi, who was approximately twenty-two (22) years old, as a part-time officer. (*Id.,* ¶ 47.)

In summer 2012, Plaintiff was reprimanded for not properly handling the security of a person transporting a bank deposit. (*Id.,* ¶ 45.) Plaintiff disputed the basis for this discipline. (*Id.*) Around the same time, Officer Price screamed at a Township Supervisor, and while the Supervisor requested that he be disciplined, Chief Hickey declined. (*Id.,* ¶ 46.)

By January 2013, the Police Department was compromised of Chief Hickey, Plaintiff Krawczyk, and Officers Malick, Price, and Cianfichi. (*Id.,* ¶ 49.) Plaintiff asserts that he worked the most hours of the part-time officers: sometimes exceeding thirty-two (32) hours, and on occasion more than forty (40) hours. (*Id.,* ¶ 50.) He maintains that he satisfactorily performed his duties and assisted in training new officers throughout his employment. (*Id.,* ¶ 51.) Plaintiff inquired about becoming a full-time officer, but the Supervisors and Chief Hickey did not respond. (*Id.*, ¶ 52.) At the same time, the Township hired multiple part-time officers, all of whom were younger than Plaintiff. (*Id.,* ¶ 53.)

During this same period, Chief Hickey and the Supervisors would regularly make age-related comments to Plaintiff: that he was the "right age to retire," or that "most cops retire at 50." (*Id.,* ¶ 54.) Chief Hickey and the Supervisors suggested other jobs for Plaintiff to consider because there were no age restrictions. (*Id.*) Chief Hickey allegedly made comments such as "the federal prison is hiring, and there's no age restriction," and "I can probably get you in the attorney general's office, there's no age restriction there." (*Id.*, ¶ 55.)

On or about April 23, 2013, when off-duty and with his family in a vehicle, Chief Hickey followed Plaintiff back to the station at the end of Plaintiff's shift in a "visible rage" and screamed at Plaintiff that he was fired. (*Id.,* ¶¶ 56-57.) Chief Hickey stated that Plaintiff was fired because Plaintiff's wife had been in the police station with him during his shift, and Plaintiff had met up with her while on patrol. (*Id.,* ¶ 58.)

Plaintiff admits that at times he would meet his wife while on patrol. (*Id.*, ¶ 59.) She

would pull her car next to his car while he was parked on patrol.  (*Id.,* ¶ 60.)  Plaintiff asserts that he had done this before, and Chief Hickey knew about it.  (*Id.,* ¶ 61.)  Younger officers would meet up with people in this manner, known as "bumping up," as well, and were not disciplined.  (*Id.,* ¶ 62.)  Younger officers would frequently travel outside of the jurisdiction to a coffee shop while on patrol, and were not disciplined or terminated.  (*Id.,* ¶ 63.)

Chief Hickey stated that he was removing Plaintiff from the schedule because he had endangered his wife by having her in the station.  (*Id.,* ¶ 64.)  On prior occasions, Chief Hickey had asked and allowed Plaintiff's wife to be in the station organizing files and archives for the Department.  (*Id.,* ¶¶ 65-67, 76.)

Plaintiff's wife would also come to the station for Plaintiff's meal breaks, and Chief Hickey had observed this numerous times.  (*Id.,* ¶ 70.)  Chief Hickey never told Plaintiff that his wife was not allowed into the station, but he had told Plaintiff that his wife was not allowed in certain areas of the station.  (*Id.,* ¶ 71.)  At no time was his wife in the areas where she was not permitted.  (*Id.,* ¶ 72.)

When Chief Hickey removed Plaintiff from the schedule, Plaintiff sought clarification of the reasons he was being fired, but did not receive an explanation.  (*Id.,* ¶ 73.)  When Plaintiff asked if he would be returned to the schedule, Chief Hickey told Plaintiff that there was a Supervisors' meeting on May 2, 2013.  (*Id.*, ¶ 74.)  He did not tell Plaintiff to attend, so Plaintiff did not.  (*Id.,* ¶ 75.)

In a discussion with the Supervisors prior to the meeting, Chief Hickey stated that Plaintiff had endangered his wife by having her in the station.  (*Id.*, ¶ 76.)  Following the meeting, on May 3, 2013, Chief Hickey notified Plaintiff that he was no longer going to be put on the schedule, and that Plaintiff needed to return his equipment.  (*Id.,* ¶ 79.)  At that time, Plaintiff requested that the reasons for his termination be put in writing.  (*Id.,* ¶ 80.)  Chief Hickey said that he would do so, but did not.  (*Id.*)

Plaintiff was replaced by a substantially younger individual.  (*Id.*, ¶ 81.)  Younger officers are now working Plaintiff's former shifts.  (*Id.* ¶ 82.)  Younger officers were not disciplined or reprimanded for similar or more severe behavior, including traveling out of the

jurisdiction while on patrol and "bumping up".  (*Id.,* ¶¶ 82-84.)

**B. Procedural Background**

Based on the foregoing, on July 1, 2013, Plaintiff filed a complaint alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), dual-filed with the Pennsylvania Human Relations Commission ("PHRC").  The EEOC issued a right to sue letter on September 18, 2014, granting Plaintiff ninety (90) days to file suit.

On December 15, 2014, Plaintiff filed a Complaint alleging that Defendant discriminated against him on the basis of age, resulting in employment termination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (*Id.*)

On February 20, 2015, Defendant filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 7).  After I granted an extension of time, Defendant filed a Brief in Support (Doc. 10) on March 17, 2015.  After further extensions of time, on April 17, 2015, Plaintiff filed a Brief in Opposition (Doc. 13).  On May 14, 2015, Defendant filed a Reply Brief (Doc. 16).  Thus, this motion is fully briefed and ripe for disposition.

## II. Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering such a motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The statement required by F.R.C.P. 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

5

(*per curiam*) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly*, 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As such, "[t]he touchstone of the pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

In deciding a motion to dismiss, the Court considers the complaint, exhibits attached

to the complaint, and matters of public record. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Pension Benefit Guar.* Corp, 998 F.2d at 1196.

### III. Analysis

Defendant Roaring Brook Township asserts that Plaintiff fails to state a claim upon which relief can be granted for age discrimination in violation of the ADEA and PHRA, and thus his complaint should be dismissed pursuant to F.R.C.P. 12(b)(6).  Additionally, Defendant contends that to the extent that Plaintiff requests punitive damages for willful violations of the ADEA and PHRA, such claims fail as a matter of law because punitive damages are not available against a municipality such as Defendant.

### A. ADEA and PHRA[1]

Defendant asserts that Plaintiff's Complaint (Doc. 1) fails to state a claim upon which relief can be granted because it contains insufficient factual allegations to support his claim that he was terminated in violation of the ADEA and PHRA.  Defendant asserts that Plaintiff has not demonstrated that he was terminated because of his age.

Upon review of the facts in a light most favorable to Plaintiff, and resolving all inferences in Plaintiff's favor, Defendant's Motion to Dismiss (Doc. 7) will be denied.  Plaintiff has plausibly stated a claim that Defendant violated his right to be free of discrimination on the basis of age as protected by the ADEA and PHRA.

Under the ADEA, it is unlawful for employers "to discharge any individual or otherwise

---

[1] "The same legal standard applies to both the ADEA and the PHRA." *Kautz v. Met Pro Corp.*, 412 F.3d 463, 466 (3d Cir. 2005).  Courts generally collapse the two strands of analysis into one. *Id., see also Jackson v. Planco*, 431 F. App'x 161, 164 n.2 (3d Cir. 2011).  Thus, I analyze Plaintiff's claims under the PHRA under the ADEA standard.

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The purpose of the Act is to prohibit age discrimination in employment and "to promote employment of older persons based on their ability rather than age." 29 U.S.C. § 621(b).

In its Motion to Dismiss (Doc. 7), Defendant argues that "Nowhere in the Complaint does Plaintiff allege that he was terminated on May 3, 2013 because of his age." (*Id.,* ¶ 13.) However, the Complaint states that "Defendant's decision to terminate Plaintiff's employment was because of Plaintiff's age, which at the time was approximately 55 years old." (Doc. 1, ¶ 90.) Furthermore, Plaintiff has met the standard that the Third Circuit Court of Appeals has established to state a claim under the ADEA.

To survive a 12(b)(6) motion on an ADEA claim, a plaintiff need only allege (1) he is over forty (40) years old, (2) he is qualified for the position in question, (3) he suffered from an adverse employment decision, and (4) his replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Hill v. Borough of Kutztown*, 455 F.3d 225, 247 (3d Cir. 2006)(citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004)).

The Complaint sufficient alleges these four (4) factors.  First, Plaintiff was born in 1958, thus was over forty (40) years old for the duration of the time that the alleged discrimination took place. (Doc. 1, ¶ 21.) Second, having satisfactorily worked as a part-time officer with the Township since 2003, Plaintiff was well-qualified for the position, and states as much in his complaint. (*Id.,* ¶¶ 23, 51.) Third, the termination of Plaintiff is an adverse employment decision.  Lastly, Plaintiff alleges that he was replaced by a substantially younger individual. (*Id.,* ¶¶ 81-82). Defendant argues that this allegation is not sufficient to state a claim because Plaintiff does not identify the person who replaced him. However, I find it unnecessary, at least at this stage, for Plaintiff to identify the specific individual(s). Therefore, Plaintiff has properly alleged an ADEA and PHRA claim sufficient to survive a 12(b)(6) motion. Based on the foregoing, the motion to dismiss will be *denied*.

**B. Punitive Damages**

In its Motion to Dismiss (Doc. 7), Defendant argues that Plaintiff's claim for punitive damages for willful violations of the ADEA and PHRA is barred because such damages are not available against a municipality such as Defendant.  In his Brief in Opposition to the Motion to Dismiss, Plaintiff states that he does not seek punitive damages under the PHRA. (Doc. 13, n. 2.)  He does request punitive damages under the ADEA, and such damages against a municipality are available.  (*Id.,* 14-15.)  Defendant recognizes that this is correct in its Reply Brief but contend that "the allegations fall well short of amounting to willful violations."  (Doc. 16, 6.)

The United States Supreme Court has held that an employer's actions are willful under the ADEA if "the employer . . . knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA."  *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 126 (1985).  Viewing the allegations in a light most favorable to Plaintiff, and resolving all inferences in his favor, he states a plausible claim that Defendant willfully violated the ADEA.  The ADEA makes clear that it is illegal to discriminate against employees on the basis of age.  Plaintiff's supervisor regularly made comments about wanting Plaintiff to retire or find employment elsewhere because of his age, and his desire to replace Plaintiff with younger employees.  Plaintiff's supervisor punished and ultimately terminated him for the same actions that went unpunished for younger employees.  Plaintiff has stated sufficient facts to state a plausible claim that Defendant willfully violated the ADEA, and dismissal is not warranted. Based on the foregoing, Defendant's motion to dismiss Plaintiff's claims for punitive damages under the ADEA will be *denied.*

## IV. Conclusion

For the above reasons, Defendant's Motion to Dismiss (Doc. 7) will be *denied.*  An

appropriate order follows.

July 6, 2015 /s/ A. Richard Caputo
Date A. Richard Caputo
United States District Judge